UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY J. LEBLANC,

Plaintiff

v.

KINDRED NURSING CENTERS EAST, LLC
d/b/a EMBASSY HOUSE,

Defendant

Civil Action No. 04-CV-10193 RCL

## MEMORANDUM OF DEFENDANT IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

Defendant Kindred Nursing Centers East, LLC ("Kindred" or the "Company") submits

this Memorandum of Law in Support of its Motion for Summary Judgment.

### INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff, Larry LeBlanc, previously employed by Kindred for 14 months as a nursing

home Administrator, filed this action in Suffolk Superior Court on or about December 23, 2003.

Plaintiff's one-count Complaint alleges that he was discharged in violation of the Massachusetts

Whistleblower statute for healthcare providers, G.L. c. 149, §187. The action was removed to

this Court pursuant to 28 U.S.C. §1332. In accordance with the Court's Scheduling Conference

Order, fact discovery closed in this case on September 30, 2004.

The record evidence discloses that Plaintiff cannot raise a genuine issue of material fact

with respect to his "whistleblower" claim, because there is no probative evidence that Kindred's

legitimate business reasons for terminating Plaintiff's employment were, in reality, pretexts for

unlawful retaliation. Rather, Plaintiff was discharged in August 2003, because of his

documented performance problems, and his continuing refusal to follow management directives that were designed to improve the financial performance of his nursing home.

As an initial matter, the evidence establishes that Kindred had serious dissatisfaction with Plaintiff's performance after just four months on the job. This dissatisfaction was documented in a detailed written warning issued to Plaintiff on November 1, 2002 - - well before Plaintiff initiated most of his "objections" to various workplace matters. Despite the written warning issued to Plaintiff in the Fall of 2002, Plaintiff failed to remedy his managerial deficiencies, and the financial performance of his nursing home deteriorated during 2003.

Plaintiff's performance was rendered even more problematic by his continuing reluctance and/or outright refusal to implement reasonable and straightforward measures to address the financial difficulties exhibited by his nursing home. For instance, Plaintiff was resistant to the idea of conducting weekly marketing meetings to develop strategies to improve the nursing home's occupancy rate. In addition, while Plaintiff complained that his facility was forced to incur substantial contract labor expenses because of the allegedly low wages paid to employees at his facility, Plaintiff inexplicably refused to conduct a wage survey to determine the compensation packages being provided by competing nursing homes. Plaintiff was also unwilling to utilize the Company's technical expertise to evaluate whether his nursing home was losing valuable revenue because of a failure to properly document the clinical services being provided to residents.

Based upon these continuing performance deficiencies, Plaintiff was issued additional written warnings in June 2003, and again in July 2003. Plaintiff was given numerous opportunities to comply with reasonable directives that were both economically justified and easy to implement. Plaintiff, however, was persistently unwilling to perform the simple and

straightforward tasks that were specified by his supervisors. As a result, Kindred concluded that its only reasonable option was to terminate Plaintiff's employment.

In response to this reasonable employment decision, Plaintiff now claims that he was subject to a retaliatory and vindictive discharge because he refused to participate in and/or protested certain Company practices that he believed to be unlawful. However, the evidence reveals that Plaintiff cannot establish a prima facie case of retaliation under G.L. c. 149, §187 because the concerns raised by Plaintiff: (a) do not meet the statutory definition of protected activity because they did not pose any risk to the public health, and/or did not involve any protest or refusal to participate by Plaintiff; and (b) do not allow a factfinder to reasonably infer a causal relationship between  Plaintiff's expressed concerns and Kindred's subsequent decision to terminate his employment.

Not only is Plaintiff unable to meet the requirements of a prima facie case of whistleblower retaliation, but his claim cannot withstand summary judgment for a separate and independent reason: the record establishes that Kindred has dispelled any inference of retaliation by articulating legitimate non-discriminatory reasons for Plaintiff's discharge, and Plaintiff has not presented any direct or indirect evidence that could sustain a finding that Kindred's stated reasons are unlawful pretexts.

## ARGUMENT

I.    **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S WHISTLEBLOWER CLAIM**

### A.    THE STANDARD FOR SUMMARY JUDGMENT

The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well settled that the mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion:

> "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . . In essence . . . the inquiry . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-252 (1986).

Genuine issues of material fact cannot be conjured by a non-moving party who is merely speculating as to what evidence might be produced at trial. On issues where the non-movant bears the burden of proof, he must present definite, competent evidence to rebut the motion. See Anderson, 477 U.S. at 256-257; Melanson v. Browning-Ferris Indus., 281 F. 3d 272, 276 (1st Cir. 2002) (in order to "establish the existence of a factual controversy that is both genuine and material," the non-moving party "must 'affirmatively point to specific facts that demonstrate the existence of an authentic dispute.'" (quoting McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995)). This evidence "cannot be conjectural or problematic; it must have substance in that it limns differing versions of the truth which a fact finder must resolve at an ensuing trial." Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 181 (1st Cir. 1989).

Summary judgment can be, and often is, appropriate in employment discrimination/retaliation cases where the party resisting judgment "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort, 218 F.3d 1, 5 (1st Cir. 2000) (citation omitted); see also Williams v. Raytheon Co., 220 F.3d 16, 21 (1st Cir. 2000) ("To succeed on a claim for retaliatory

discharge, . . . 'there must be competent evidence that. . . a retaliatory motive played a part in the adverse employment actions alleged.'") (citation omitted); <u>Zapata-Matos v. Reckitt & Colman, Inc.</u>, 277 F.3d 40, 47 (1st Cir. 2002) (finding summary judgment for employer appropriate when the plaintiff presents "weak issue of fact as to pretext" and there is "strong independent evidence that no discrimination occurred.").

## B.  **PLAINTIFF'S ATTEMPT TO INVOKE THE PROTECTIONS OF THE MASSACHUSETTS WHISTLEBLOWER STATUTE FOR HEALTH CARE PROVIDERS IS LEGALLY DEFICIENT FOR A NUMBER OF INDEPENDENT REASONS**

Plaintiff's single count Complaint is asserted under the Massachusetts whistleblower statute for health care providers, G.L. c. 149, §187. Specifically, Plaintiff alleges that Defendant's "course of conduct toward [P]laintiff in discharging him was motivated by impermissible factors, namely to retaliate against [P]laintiff for his refusal to participate in and/or his protests concerning, certain of defendant's practices, which practices, [P]laintiff reasonably believed to be in violation of law." (Compl. ¶ 8). In making this allegation, Plaintiff is seeking to invoke the protection of G.L. c. 149, §187(b)(3), which provides in pertinent part that a health care facility cannot take retaliatory action against a health care provider who

> "(3) objects to or refuses to participate in any activity, policy or practice of the health care facility or of another health care facility with whom the health care provider's health care facility has a business relationship which the health care provider responsibly believes is in violation of a law or rule or regulation promulgated pursuant to law or violation of professional standards of practice which the health care provider ***reasonably believes poses a risk to public health***." (emphasis added)

During his deposition, Plaintiff contended that his discharge in August 2003 was retaliatory and improperly motivated. Plaintiff attributes his discharge to the fact that he allegedly objected to various unlawful or unsafe practices at his nursing home: (a) Plaintiff learned shortly after becoming Administrator that criminal offender ("CORI") checks had not

5

been completed for many employees at the facility; (b) Plaintiff objected to the verification statements he was asked to sign in connection with his facility's cost reports; (c) Plaintiff objected to converting a room with three empty beds to rehabilitation space without first obtaining State approval; (d) Plaintiff voiced a concern about making improvements to a parking lot that the facility utilized but did not own; and (e) Plaintiff voiced a concern about converting some office space into a rehabilitation room (Pl. Tr. II, 184-85, 202). For the reasons described below, Plaintiff's retaliatory discharge claim cannot survive summary judgment for a number of separate and independent reasons.

### 1.    <u>Plaintiff Cannot Establish A Prima Facie Case Of Retaliation.</u>

It is well settled that claims for retaliatory discharge, including claims brought under a whistleblower statute, are analyzed under the same framework applicable to employment discrimination claims, <u>i. e.</u> the framework first established by the U.S. Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F. 3d 252, 262 (1st Cir. 1999) (analyzing claim brought under the Maine Whistleblowers Protection Act). Accordingly, to present a prima facie case of retaliatory discharge, an employee must show (1) that he engaged in a **protected** activity, (2) that his employer discharged him, and (3) that there was a **causal nexus** between the protected activity and the firing. <u>Higgins</u>, 194 F. 3d at 262 (citing <u>Hoeppner v. Crotched Mountain Rehab. Ctr., Inc.</u>, 31 F. 3d 9, 14 (1st Cir. 1994)). (emphasis added). If the employer then responds to the prima facie case by "proffering a legitimate, nonretaliatory reason for the discharge, the employee must adduce some significantly probative evidence showing both that the preferred reason is pretextual and that a retaliatory animus sparked his dismissal." <u>Higgins</u>, <u>supra</u>.

**a.    Most Of Plaintiff's Expressed Concerns Do Not Constitute Protected Activity Because They Did Not Involve Any Risk To Public Health**

Here Plaintiff cannot satisfy the requirements of a prima facie case because most of his concerns do not involve any **protected** activity under G. L. c. 149, §187. The statute specifically requires that an employee must demonstrate that he **reasonably believed** that the objected to an activity, policy or practice that **"poses a risk to public health."** Thus, it is not enough for Plaintiff to demonstrate a reasonable belief that Kindred was engaging in a practice that violated a law, or rule or regulation promulgated pursuant to law, but he must also establish a reasonable belief that the employer's alleged violation "poses a risk to public health."[1]

It is clear that most of the activities that Plaintiff cites to support his retaliatory discharge claim did not involve matters that he could have reasonably believed "pose[d] a risk to public health." For instance, while Plaintiff objected to signing verification statements that were requested by Kindred's corporate office for the facility's Cost Reports (See Defendant's Statement of Undisputed Material Facts ("Defendant's SOF"), ¶¶18-21), that matter involved an internal policy regarding financial reporting procedures, and clearly did not pose a "risk to public health."

Similarly, Plaintiff's disagreements with his supervisor regarding whether Kindred needed to obtain prior state approval before converting an empty room with three beds (or converting an activities office) to space that could be used to provide rehabilitation services, did

[1] Thus, the whistleblower statute for healthcare providers is not as sweeping in its protection as the whistleblower statute for public employees, G.L. c. 149, §185. The latter statute offers protection whenever an employee objects to an activity that he/she reasonably believes is in violation of a law, or rule or regulation promulgated pursuant to law, or poses a risk to public health, safety, or the environment. In contrast, the absence of disjunctive clauses separated by commas in the analogous provisions of c. 149, § 187 (b)(1)-(3) reveals a Legislative intent to limit protection to violations that pose a risk to the "public health." This is also a logical interpretation of the scope of § 187, because after all, the statute is designed for "healthcare providers."

7

not involve any activity that posed a risk to public health. Significantly, Plaintiff makes no assertion that taking three empty beds out of circulation would have adversely impacted or jeopardized the health of elderly or disabled residents, or prospective residents; in fact, it is undisputed that because of a low resident census, the facility had a large number of unoccupied beds throughout Plaintiff's employment. (Pl. Tr. I, p. 155; Kelsey, p. 20). Indeed, Plaintiff testified that he was fine with the idea of converting three beds to rehabilitation space, and his disagreement with his supervisor focused **only** on whether there was a need to obtain prior state approval for the conversion. (Id.)

In addition, Plaintiff cannot make any contention that his subsequent concern regarding whether the state needed to approve the use of an activities office for rehabilitation space constituted a Company policy that posed a "risk to public health." Finally, Plaintiff contends that he was retaliated against because he expressed concern about Mr. Reis' instruction to re-pave and improve a parking lot owned by an adjacent restaurant that had been used by the Center's employees for many years. Plaintiff testified that it was unlawful for Mr. Reis to order him to make improvements on someone else's property. (P. Tr. II, p. 186). It is clear, however, that a directive to re-pave a parking lot does not pose a **risk to public health**, and therefore, Plaintiff's concern about the directive does not provide him with a remedy under G.L. c.149, §187.[2]

---

[2]  Moreover, Plaintiff's concerns about using an activities office for rehabilitation space and about re-paving an adjacent parking lot, do not rise to the level of protected activity for an additional and independent reason. Specifically, in neither case did Plaintiff's interaction with Mr. Reis meet the statutory test of "object[ing] to or refus[ing] to participate in any activity, policy or practice . . . ." c. 149, § 187(b)(3). Rather, Plaintiff's deposition testimony reveals that these issues came up during routine conversations with Mr. Reis, and Plaintiff's comments did not constitute an **objection** or **refusal** to participate in an activity. For instance, with regard to converting the activities office, Plaintiff testified that he had a single conversation with Mr. Reis and Mr. Govoni in which he merely said to them, "I believe we should get approval or at least

Thus, with respect to each of the four activities discussed above, Plaintiff cannot establish a prima facie case of retaliation under the healthcare whistleblower statute because none of his concerns/objections constituted "protected activity" as defined by G.L. c. 149, §187.[3]

      **b.**    **Because Plaintiff Had Been Subject to Formal Disciplinary Action By Kindred _Prior_ To Raising Most Of His Workplace Concerns, Plaintiff Is Unable To Satisfy The Causal Nexus Requirement Of a Prima Facie Case**

Plaintiff's concerns regarding the above four activities also fail to establish a prima facie case of retaliation for an additional reason. Specifically, Plaintiff cannot establish the "causal nexus" requirement of a prima facie case, because the record demonstrates that Kindred had already taken serious disciplinary action against Plaintiff **before** he raised concerns/objections about these four activities. Specifically, on November 1, 2002, Plaintiff was issued a memorandum entitled "FINAL DISCIPLINARY ACTION." That memorandum (a) listed nine separate concerns regarding Plaintiff's job performance and conduct, (b) advised him that he was "being placed on final disciplinary warning," and (c) further notified Plaintiff that "failure to improve performance will result in immediate termination." (Pl. Dep. Ex. 16). Significantly, the November 1, 2002 disciplinary action against Plaintiff occurred **before** any of the following events: (a) Plaintiff's objection regarding the removal of beds in early 2003; (b) Plaintiff's objection in the summer of 2003 about the conversion of the activities office to rehabilitation space; (c) Plaintiff's objection to the July 2003 directive to make improvements to an adjacent

---

corporate approval." (Pl. Tr. I, pp. 185-86). With regard to the parking lot, Plaintiff simply posed the following question to Mr. Reis, "Gilbert, don't you think we should get permission from Christo's?" (Pl. Tr. I, pp. 177-78). Plaintiff made no further statements to Mr. Reis regarding the parking lot. (Id.)

[3] The legal deficiencies with respect to the fifth issue cited by Plaintiff – the CORI criminal record background checks – is discussed below at pp. 10-12.

parking lot, and (d) Plaintiff's failure/refusal to sign the verification statements for the cost reports being prepared in February and August 2003.[4]

The applicable case law holds that where as here, an employer has imposed significant disciplinary action **before** the employee has engaged in protected activity, the fact that the employee continues to be subject to discipline **after** the protected activity does not give rise to an inference of a causal connection between the protected activity and the adverse employment action. See Mole v. University of Massachusetts, 2004 Mass. LEXIS 514 (2004) (holding that where "adverse employment actions or other problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not permissible to draw the inference that subsequent adverse actions, taken after the employer acquires such knowledge, are motivated by retaliation);" Hoeppner v. Crotched Mountain Rehabilitation Ctr., 31 F.3d 9, 12, 14-16 (1st Cir. 1994) (affirming summary judgment in favor of employer where plaintiff had been placed on probation before she had filed claim of sexual harassment); Prader v. Leading Edge Prods, Inc., 34 Mass. App. Ct. 616, 617 (1996) (affirming summary judgment for employer on plaintiff's retaliation claim under Fair Labor Standards Act, where employer's reason for terminating the plaintiff was consistent with the content of a performance evaluation issued to plaintiff before employer had knowledge of her protected activity).

        c.      **Plaintiff's Testimony Regarding His Need To Conduct Criminal Background Checks For Employees Cannot Give Rise to A Prima Facie Case Under The Whistleblower Statute For Two Independent Reasons**

Finally, Plaintiff contends that his termination was somehow related to the fact that he was required to remedy the alleged failure of the prior Administrator to perform criminal record background checks for many Center employees. Assuming, for the sake of argument, that the

---

[4] Plaintiff had also objected to signing a verification statement in August 2002.

failure to check whether prospective nursing home employees had prior criminal records could potentially create a risk to public health, the record evidence demonstrates that Plaintiff did not **object** or **refuse to participate** in any activity.

First, Plaintiff testified that his supervisor, Mr. Reis, brought the matter of conducting criminal background checks to Plaintiff's attention. Further, Plaintiff acknowledged that Mr. Reis did not seek to ignore the problem. It is undisputed that Mr. Reis told Plaintiff to remedy the situation by conducting the necessary background checks for all employees (Pl. Tr. I, pp. 86-87). Plaintiff also testified that Mr. Reis authorized him to utilize an outside vendor to perform the criminal background checks, and Plaintiff further testified that Mr. Reis did not prevent or interfere with Plaintiff's efforts to remedy the problem (Pl. Tr. I, p. 92; Pl. Tr. II, p. 117). Under these circumstances, it is logically untenable for Plaintiff to contend that he was "blowing the whistle" on any unlawful/improper practices with respect to criminal background checks, and therefore Plaintiff's prima facie case on this issue fails because there is no evidence that he was engaging in any protected activity as defined by G.L. c. 149, §187.

In addition, the evidence regarding the issue of criminal background checks is insufficient to satisfy the causal nexus requirement of a prima facie case. That is because Plaintiff's interactions with Mr. Reis on this matter occurred during Plaintiff's first month of employment i.e. in July 2002. However, Kindred's decision to terminate Plaintiff's employment did not occur until 13 months later in August 2003. Where, as here, there is a substantial time lapse between the alleged protected activity and the adverse job action, the plaintiff has failed to establish a causal connection between the two events. See Mesnick v. General Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992) (affirming summary judgment for employer on plaintiff's retaliation claim because the nine-month period between plaintiff's

protected conduct and the adverse action suggested the absence of any causal connection); Benoit v. Technical Manufacturing Corporation, 331 F.3d 166, 175 (1ˢᵗ Cir. 2003) (affirming summary judgment for employer on retaliation claim, and holding that where discharge occurred approximately 13 months after employee's protected activity, "there is insufficient evidence for a jury to find that the two were causally related.")

Accordingly, for all the foregoing reasons, Plaintiff cannot establish a prima facie case of retaliation under G.L. c. 149, § 187, and Defendant is entitled to summary judgment for this reason alone.

## 2.   **Kindred Has Articulated Legitimate Reasons For Plaintiff's Termination.**

Assuming *arguendo*, that Plaintiff could establish a prima facie of retaliation, Kindred has dispelled any inference of unlawful retaliatory intent by articulating legitimate, non-retaliatory reasons for its decision to terminate Plaintiff's employment. See McDonnell Douglas Corp. supra at 802. The Massachusetts Supreme Judicial Court has explained the employer's burden as follows:

> In the second stage, the employer can rebut the presumption created by the prima facie case by articulating a legitimate, nondiscriminatory reason for its [employment] decision. . . . This burden of production is not onerous. The reasons given for a decision may be unsound or even absurd, and the action may appear arbitrary or unwise, nonetheless the defendant has fulfilled its obligation. The defendant is not required to persuade the fact finder that it was correct in its belief.

Matthews, 426 Mass. at 128 (quotations and citations omitted).

Here, Kindred has more than met its burden. The record establishes that Plaintiff's termination was the result of a number of well documented performance deficiencies. (Defendant's SOF ¶¶3-15). Indeed, during Plaintiff's 14 months as Administrator, the operational performance of his nursing home was troubling in a number of areas, and Plaintiff

received written warnings for several different performance problems. Specifically, the record disclose that on November 1, 2002, Plaintiff received a written disciplinary notice that cited many performance deficiencies, including making misrepresentations about resident care, safety issues and staff attitude, and failing to provide leadership and consistent support to the Center's staff, resulting in poor morale (Pl. Dep. Ex. 16). During 2003, the financial performance of Plaintiff's nursing home was deteriorating, as evidenced by a declining resident census and high labor costs (Kelsey, pp. 18, 20). Due to the problematic performance of Plaintiff's nursing home, Plaintiff's supervisors urged him to conduct weekly marketing meetings with his key staff to discuss strategies to increase the resident census (Govoni pp. 12-15). While Plaintiff reluctantly agreed to conduct such marketing meetings, he subsequently failed to provide any documentation to substantiate that the meetings had occurred (Id. 18-20). Kindred's concerns about Plaintiff's performance led the Company to issue him a written warning in June 2003 (Pl. Dep. Ex. 18).

Despite Plaintiff's receipt of written warnings in November 2002 and June 2003, his performance problems continued. While Plaintiff claimed that he could reduce spending on outside contract labor (i.e. use of temporary personnel from staffing agencies) by increasing the wages paid to Center employees, Plaintiff persistently refused to conduct a wage survey to determine the wages being offered by competing nursing homes (Kelsey pp. 28-30, 33; Reis, p. 117; Govoni pp. 27-30). Notwithstanding that Plaintiff had been told on June 3, 2003 to complete a wage survey in two weeks, he declined to take any action on this matter during the following six weeks (Pl. Tr. II, pp. 153-54; Pl. Dep. Ex. 22).

Plaintiff's refusal to conduct a wage survey did not reflect the only area of his intransigence. For instance, Plaintiff's supervisors wanted to evaluate whether Plaintiff's nursing

home was properly documenting the nursing services provided to residents to ensure that the facility was receiving appropriate financial reimbursement from the Medicaid program (Kelsey pp. 25-26; Govoni pp. 30-31). To that end, Plaintiff was directed to utilize a highly experienced Kindred nurse who specialized in reviewing resident charts for documentation purposes (Id.) While Plaintiff had been told during the week of June 9, 2003 to make arrangements for the nurse to visit his facility, Plaintiff persistently refused to take any action to obtain the nurse's assistance during the following month (Govoni pp. 32-33; Pl. Dep. Ex. 22).

As of mid-July 2003, it was clear that Plaintiff was exhibiting uncooperative behavior with respect to complying with the Company's reasonable and straightforward instructions to conduct a wage survey and to utilize a nursing specialist to review resident charts at his facility. (Pl. Dep. Ex. 22) Accordingly, on July 15, 2003, Plaintiff received a further written warning in which he was given two additional weeks to complete these mandatory tasks. (Pl. Dep. Ex. 22) Despite this additional opportunity to remedy his intractable behavior, Plaintiff readily admits that he failed to make any effort to comply with the deadlines set forth in his July 15, 2003 warning, and therefore, his employment was terminated in August 2003. (Pl. Tr. II, pp. 163-64; 180-81; Pl. Dep. Ex. 24)

Accordingly, Kindred has proffered substantial evidence that Plaintiff was terminated for legitimate and non-retaliatory business reasons.

### 3. Kindred Is Entitled To Summary Judgment Because There Is No Probative Evidence of Pretext.

Because Kindred has articulated nonretaliatory reasons for the decision to terminate Plaintiff,

> [any] presumption of discrimination vanishes, and the burden returns to the plaintiff to persuade the court, by a fair preponderance of the evidence, that the defendant's proffered

14

> reason for its employment decision was not the real reason but is a
> pretext for discrimination. The plaintiff bears the burden of
> persuasion on the ultimate issue of discrimination, and therefore
> must produce evidence sufficient to support a jury verdict that it
> was more likely than not that the articulated reason was pretext for
> actual discrimination.

Matthews, supra at 128 (citations omitted). See also Texas Dept. of Community Affairs v.

Burdine, 450 U.S. 248, 256 (1981); McMillan v. Mass. Soc. Prevention of Cruelty to Animals,

140 F.3d 288, 309 (1st Cir. 1998) ("to succeed on a retaliation claim under both state and federal

law, when, as here, there is no direct evidence of retaliatory animus, a plaintiff must both

establish a prima facie case and prove that the defendants' legitimate business reasons for

terminating the plaintiff were pretextual.")

In assessing whether the employer's reason is a pretext, the court's "focus must be on the

perception of the decision-maker," i.e., whether the employer believed its proffered reason to be

credible. Mesnick, 950 F.2d at 824; accord Karazanos v. Navistar Int'l Transp. Corp., 948 F.2d

332, 338 (7th Cir. 1991) ("The employee's perception of himself . . . is not relevant. It is the

perception of the decision-maker which is relevant."). Thus, if an employer's articulated reason

for the employment decision is the real reason, the plaintiff cannot establish unlawful retaliation

even if he demonstrates that the explanation given was unreasonable.

Plaintiff cannot demonstrate that he is entitled to a jury trial on his claim of retaliation,

because he has not raised any probative evidence of pretext. Plaintiff's contentions that he

performed his job responsibilities in a satisfactory manner, and that he was unfairly criticized by

his supervisors, do not raise a genuine issue of pretext. Neither an employee's opinion of his or

her relative job performance, nor the overall soundness or fairness of an employer's business

judgment, has any bearing in determining whether the employer's articulated reason for an

employment decision is a pretext. See Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 12-13

(1st Cir. 2001) (recognizing that whether the employer's criticisms of plaintiff were fair "is beside the point so long as they were not [unlawfully] motivated."); Feliciano, 218 F.3d at 8 (1st Cir. 2000) ("even if rational trier of fact could infer . . . that [employer's] decision to fire [plaintiff] was 'unfair' (because she continued to perform her job well), that proof is insufficient to state a claim under Title VII."); McMillan, 140 F.3d at 309-10 (affirming summary judgment for employer on plaintiff's retaliation claim because plaintiff had not demonstrated that the explanation for her termination was pretextual: "even if [decisionmaker] may have exercised arguably poor business judgment in terminating her, and in doing so in an abrupt, clumsy, and unfeeling manner, it would be unreasonable on the evidence for a factfinder to conclude that his explanation for the termination was, in fact, not the true reason"); Hoeppner, 31 F.3d at 17 (affirming summary judgment for employer on plaintiff's retaliatory discharge claim and recognizing that "evidence contesting the factual underpinning of the reason for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question") (citations omitted); Mesnick, 950 F.2d at 825 ("Courts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions.")

Similarly, the Massachusetts Supreme Judicial Court has recognized "a determination that [plaintiff] was the subject of unlawful discrimination . . . . may not be based solely on evidence that [plaintiff] was treated unfairly by [the] defendant." Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 778 (2001) ("[N]ot every unfair termination – however 'callous'. . . – constitutes unlawful employment discrimination in violation of G.L. c. 151B. Membership in a protected class without more is insufficient to make the difference"); Cf. Lipchitz v. Raytheon Co., 434 Mass. 493, 501 (2001) (observing that discriminatory intent may be inferred if the

employer has provided a **false** reason for its action). Simply put, the employment discrimination statutes do not "grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of managers, <u>unless the facts and circumstances indicate that [retaliatory] animus was the reason for the decision</u>.'" <u>Matthews</u>, 426 Mass. at 134 (emphasis added); <u>Brunner v. Stone & Webster Eng'g. Corp.</u>, 403 Mass. 698, 703-04 (1992), (affirming summary judgment for employer, and holding that Plaintiff's statements that she should not have been laid off because she was an excellent worker do not allow a finding that the defendant's articulated reasons were a pretext); <u>Smith College v. Massachusetts Com. Against Discrimination</u>, 376 Mass. 221 (1978) (recognizing that Chapter 151B does not protect against "poor managerial judgment," and holding that "the managerial decision may be unsound or even absurd, but, if the reason given for the decision is the real reason and is nondiscriminatory, the [adjudicatory body] has no authority to grant relief from that decision.").

Based upon the foregoing legal precedent, Plaintiff is unable to raise a genuine issue of material fact that Kindred's stated reasons for his discharge are false or pretextual. Nor has he cited any direct or circumstantial evidence that he was a victim of retaliatory bias because he "blew the whistle" or protested workplace activities that endangered the public health. At bottom, Plaintiff's argument that his termination was based on retaliatory animus is nothing more than mere speculation and unsupported conjecture. Therefore, Kindred has demonstrated its entitlement to summary judgment under Rule 56 for this additional and independent reason.

Case 1:04-cv-10193-RCL   Document 10-2   Filed 11/30/2004   Page 18 of 18

**CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that the Court grant its

Motion For Summary Judgment on Plaintiff's Complaint.

                         Respectfully submitted,

                         KINDRED NURSING CENTERS EAST, LLC,
                         d/b/a EMBASSY HOUSE SKILLED NURSING
                         AND REHABILITATION CENTER
                         By its attorneys,

                         /s/Richard W. Paterniti
                         David J. Kerman, BBO#269370
                         Richard W. Paterniti, BBO#645170
                         Jackson Lewis LLP
                         75 Park Plaza
                         Boston, MA 02116
November 30, 2004             (617) 367-0025

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2004, a copy of the foregoing was delivered by first class mail to Plaintiff's counsel, Paul A. Manoff, 47 Winter Street, 4th Floor, Boston, MA 02108.

                         *Richard W. Pat...*

                         Jackson Lewis LLP