UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY J. LEBLANC,

    Plaintiff

v.

KINDRED NURSING CENTERS EAST, LLC
d/b/a EMBASSY HOUSE,

    Defendant

Civil Action No. 04-CV-10193 RCL

## DECLARATION OF DEE A. EVERY

I, Dee A. Every, being on oath, deposes and states as follows:

1. I am currently employed in the Corporate Office of Kindred Healthcare ("Kindred"). I hold the position of Corporate Manager of Reimbursement for the Northeast Region. I have held this position since January 1998. In my position, I am responsible for ensuring that the Kindred nursing home facilities located in the New England states and Pennsylvania submit the financial information necessary to receive reimbursement from the Medicare and Medicaid programs.

2. As a manager in the Reimbursement Department, I work in Kindred's corporate headquarters in Louisville, Kentucky. One of my chief responsibilities is to prepare the mandatory Cost Reports that Kindred must submit to the federal and state governments on an annual basis to obtain proper reimbursement from Medicare and Medicaid. I also interpret state and federal regulations regarding Medicare and Medicaid reimbursement policies and procedures. I am responsible for supervising five reimbursement analysts in my group.

3. Twice a year, the reimbursement analysts in my group request and receive financial information from each nursing home facility in the Northeast region. This information

is utilized by the Reimbursement Department to prepare the annual Cost Reports submitted for Medicare and Medicaid reimbursement.

4.      Kindred's Reimbursement Department has procedures and safeguards in place that are designed to ensure the accuracy of the financial information (revenue and expenses) reported by each nursing home facility and incorporated into the facility's Cost Reports submitted to governmental authorities. For instance, when our Department is preparing the annual Cost Reports, each nursing home Administrator is required to sign and submit a written verification statement to the Reimbursement Department, certifying the accuracy of the financial information maintained by the facility and relied upon by our Department in preparing the Cost Reports. When our Department finalizes the Cost Reports, Kindred's Vice President of Reimbursement, Arthur Rothgerber, signs and certifies the cost report for each facility. Attached hereto as Exhibits A and B are cover pages for the Medicare and Medicaid Cost Reports submitted by our Department for the Embassy House Skilled Nursing and Rehabilitation Center (the "Center"), located in Brockton, Massachusetts.

5.      In February 2003, I notified all nursing home administrators in my region of the need to complete a questionnaire and provide data in order for our department to complete the Medicaid Cost Report for the fiscal year January 1, 2002 through December 31, 2002. One of the documents that must be completed is the cost report verification statement that needs to be signed by each Administrator. Our department relies upon the financial information contained in each facility's General Ledger, which is maintained in Kindred's financial system. Each nursing home is required to maintain data regarding all expenses and revenue. Attached hereto as Exhibit C is the set of materials that was sent to the Center and other nursing homes in my region in connection with preparing the Medicaid Cost Report for fiscal year 2002.

6. In March 2003, one of my reimbursement analysts advised me that Larry LeBlanc, the Administrator for the Center, had failed to properly sign the cost report verification statement for his nursing home facility. Instead, he had crossed out and deleted the form's verification statement and drafted his own language that was not acceptable. A copy of the statement received from Mr. LeBlanc is attached as <u>Exhibit D</u>. Mr. LeBlanc was refusing to properly sign the verification statement for his facility because he claimed that he did not review the actual Cost Report sent out by Kindred's Reimbursement Department. The reimbursement analyst explained to Mr. LeBlanc that we were not asking him to verify the accuracy of the Cost Report itself. Rather, as Administrator of the Center, Kindred expected him to verify the accuracy of the information contained in the Center's general ledger, which our Department relies upon in preparing and submitting the Cost Report to the government. Despite receiving this explanation, Mr. LeBlanc still refused to sign the verification statement.

7. Accordingly, I informed my supervisor, Susan Riedl, Kindred's corporate Director of Reimbursement of the problem. Ms. Riedl then sent an email to Mr. LeBlanc on March 18, 2003 in which she explained to him what he was being asked to verify. The email communication to Mr. LeBlanc stated in relevant part that "we are not asking you to verify the accuracy of the Cost Report itself, rather the accuracy of the underlying data contained in your facility General Ledger, census records, etc., which support the data reported in the Cost Report, and any other documentation maintained in support of the Cost Report filing "to the best of your knowledge and belief." A copy of this email communication is attached hereto at the bottom of <u>Exhibit E</u>.

8. Mr. LeBlanc did not respond to Ms. Riedl's email communication, and he did not provide a signed verification statement as requested by Ms. Riedl and my reimbursement analyst. Accordingly, on April 22, 2003, I sent my own email communication to Mr. LeBlanc

and pointed out that we needed to receive his signed verification statement before we could file the Medicaid Cost Report. My email also pointed out that his facility would experience substantial financial penalties in terms of forfeited Medicaid reimbursement if the Cost Report was not submitted to the government in a timely fashion. <u>See</u> top half of <u>Exhibit E</u>. Shortly following my email communication to Mr. LeBlanc, he submitted a properly signed verification statement to the Reimbursement Department. A copy of that verification statement is attached here to as <u>Exhibit F</u>.

9. At no time did Mr. LeBlanc ever report any concern about the accuracy of the financial information maintained in his facility's General Ledger, nor did he ever question the accuracy of the Cost Report being prepared by the Reimbursement Department. The verification statement signed by Mr. LeBlanc is not sent to the government, but rather is maintained with the cost report files as compliance support.

10. The Cost Reports submitted to government officials for each nursing facility are a matter of public record. In addition, when Mr. LeBlanc was employed as an Administrator, he could have requested and received from our Department a copy of any Cost Report filed for his facility. Mr. LeBlanc never requested any copies of his facility's Cost Reports from our Department.

11. I did not have any conversations with Mr. LeBlanc's supervisors about his reluctance to sign the verification statement required by our Department.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on November 22, 2004.

_____
Dee A. Every