UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY J. LEBLANC,<br><br>      Plaintiff<br><br>v.<br><br>KINDRED NURSING CENTERS EAST, LLC<br>d/b/a EMBASSY HOUSE,<br><br>      Defendant | Civil Action No. 04-CV-10193 RCL |

**MOTION OF DEFENDANT TO STRIKE PORTIONS
OF PLAINTIFF'S AFFIDAVIT SUBMITTED IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Defendant Kindred Nursing Centers East, LLC ("Kindred" or the "Company") moves to strike portions of Plaintiff's affidavit proffered in support of his opposition to summary judgment to the extent that the affidavit contradicts or improperly embellishes Plaintiff's sworn deposition testimony. During Plaintiff's deposition, he was asked clear and unobjectionable questions and had the opportunity to fully respond to those questions. However, in an affidavit submitted by Plaintiff in connection with his opposition to summary judgment, Plaintiff has now contradicted, altered and embellished many of the clear answers he gave at his deposition in a transparent and inappropriate attempt to manufacture issues of fact. Nonetheless, it is well settled that a party cannot create issues of fact under Rule 56 by providing an affidavit that contradicts prior sworn testimony.

**Relevant Facts Relating to Plaintiff's Contradictory and Improper Affidavit Statements**

The affidavit statements of Plaintiff that are the subject of this Motion to Strike are set forth below:

1. In his affidavit at <u>Paragraph 2</u>, Plaintiff states that his supervisor "Mr. Reis interfered with and obstructed my efforts to get the mandated CORI [criminal background] checks done  He told me he didn't want me to bring in the third party vendor who had a contract with Kindred to do the CORI checks for my nursing home.  Reis insisted that the mandated CORI checks had been done.  I told him that my investigation showed they had not been done . . ."

**<u>Kindred's Response</u>:**  These assertions contradict Plaintiff's deposition testimony, in which he testified that **Mr. Reis** informed Plaintiff that the prior administrator of the nursing home had failed to do certain CORI checks, and that it was **Mr. Reis** who directed Plaintiff to remedy the problem.  (Pl. Tr. I, pp. 86-87).  Plaintiff further testified that his use of Kindred's outside CORI vendor was only delayed a "couple of days" because Mr. Reis wanted to see if the CORI documents could be located somewhere in the building.  (Pl. Tr. I, p. 92).  Plaintiff also admitted in his deposition that Mr. Reis did not prevent him from fixing the CORI problem.  (Pl. Tr. II, p. 117).[1]

2. In his affidavit at <u>Paragraph 9</u>, Plaintiff states that "Mr. Govoni did not tell me in June 2003 that I needed to do another [wage] survey.  I had done a wage survey as recently as April 2003 (not eight months earlier)."

**<u>Kindred's Response</u>:**  These statements improperly contradict Plaintiff's deposition testimony, in which he repeatedly admitted that Mr. Reis and Mr. Govoni wanted him to do another wage survey.  (Pl. Tr. II, pp. 156-57).  In addition, Plaintiff further testified that the one wage survey he had performed before the summer of 2003 had been done eight months earlier in November or December 2002.  (Pl. Tr. II, pp. 124-25, 156).  At no time during Plaintiff's extensive deposition testimony on this subject did he make any claim that he had performed a wage survey in April 2003.

---

[1] Plaintiff's affidavit also misleadingly states in paragraph 2 that when Mr. Reis and he first discussed the CORI situation, Reis "got visibly angry with [Plaintiff]."  This assertion is inconsistent with Plaintiff's deposition testimony regarding the conversation (Pl. Tr. I, pp. 86-92).

3. In his affidavit at <u>Paragraph 10</u>, Plaintiff states that he did not "refuse to follow this directive (<u>i.e.</u> to arrange for an MMQ nurse to come to his facility), I called the other facility and the MMQ nurse was not available."

**<u>Kindred's Response</u>**: This statement should be stricken because it improperly contradicts Plaintiff's deposition testimony, which is as follows:

> "Q: **You never attempted to call the person to arrange for this MMQ person to come to the facility?**
>
> A: **That's correct."** (Pl. Tr. II, p. 147).

Indeed, Plaintiff clearly confirmed several times during his deposition that he had intentionally refused to comply with his supervisor's directive to make arrangements to use the MMQ nurse. (Pl. Tr. II, p. 159, 163-64, 181).

4. In his affidavit at <u>paragraph 11</u>, Plaintiff refers to the written warning he received in July 2003 and states, "I did receive this warning but questioned Govoni as to why I was receiving it, . . . Govoni repeated what he had previously said, that he was just doing 'Reis' dirty work, . . . Govoni also indicated that he thought Reis was being unfair to me."

**<u>Kindred's Response</u>**: This statement contradicts Plaintiff's deposition testimony, in which he does not claim that Mr. Govoni made these statements when issuing Plaintiff the referenced warning. (Pl. Tr. II, pp. 154-55).

5. In his affidavit at <u>paragraph 12</u>, Plaintiff states that "as far as the wage surveys, I had given several to Mr. Reis who ignored them, it made no sense that I would be fired for not doing another."

**<u>Kindred's Response</u>**: This statement improperly contradicts Plaintiff's deposition testimony, which demonstrated that Plaintiff had performed only one previous wage survey. (Pl. Tr. II, 156).

6. In his affidavit at <u>paragraph 13</u>, Plaintiff states that "Reis only very reluctantly allowed me to bring in the outside vendor to do the criminal background checks, he at first became very angry with me when I pressed the issue . . . Before the vendor was called in, Reis was hostile to my efforts to obtain compliance."

3

**Kindred's Response:**  As previously noted (See ¶1 above), these assertions contradict Plaintiff's deposition testimony in which he testified that **Mr. Reis** informed Plaintiff that the prior administrator had failed to do certain CORI checks, and that it was **Mr. Reis** who directed Plaintiff to remedy the problem.  (Pl. Tr. I, pp. 86-87).  Plaintiff further testified that his use of Kindred's outside CORI vendor was only delayed a "couple of days" because Mr. Reis wanted to see if the CORI documents could be located somewhere in the building.  (Pl. Tr. I, p. 92).  Plaintiff also admitted at his deposition that Mr. Reis did not prevent him from fixing the CORI problem.  (Pl. Tr. II, p. 117).[2]

7.  In his affidavit at paragraph 15, Plaintiff states that "I suspected that the [cost] reports might be inaccurate because Reis had ordered various rehab personnel working at other nursing homes to be paid out of our payroll, . . . When I initially told Reis why I didn't want to sign the verifications, . . ."

**Kindred's Response:**  These statements improperly contradict Plaintiff's deposition testimony, in which he testified that he had no knowledge that his facility's cost reports contained any false or fraudulent information, and he further testified that he was confident that his facility's financial information was accurate.  (Pl. Tr. I, pp. 97, 126; Pl. Tr. II, pp. 16-17).  In addition, Plaintiff testified that he **never** spoke to Reis about his concerns about the rehab personnel, and that he never complained to anyone that there was any false or fraudulent activity going on with these rehab personnel.  (Pl. Tr. I, p. 144).

8.  In his affidavit at paragraph 16, Plaintiff states that "no one from the [Kindred] Reimbursement Department ever explained to me that the form was not requesting me to verify the accuracy of the [cost] report, but was rather only verifying that my Center's ledger was accurate."

**Kindred's Response:**  This statement improperly contradicts Plaintiff's deposition testimony, in which he specifically acknowledged receiving an e-mail from the Kindred

---

[2] Plaintiff's affidavit also misleadingly states in paragraph 13 that when Mr. Reis and he first discussed the CORI issue, Reis became "very angry with me."  This assertion is inconsistent with Plaintiff's deposition testimony regarding the conversation.  (Pl. Tr. I, pp. 86-92).

4

Reimbursement Department that stated in pertinent part: **"We're not asking you to verify the accuracy of the cost report itself, rather the accuracy of the underlying data contained in your facility's general ledger, census records, et cetera . . ."** (Pl. Tr. II, pp. 42-43; Dep. Ex. 13). (emphasis added)

9.    In his affidavit at paragraph 17, Plaintiff states, "Heidi Mason, who maintained the ledger, was not supervised by me, but by Betsy Pimental, a corporate official."

**Kindred's Response**:    This statement contradicts Plaintiff's deposition testimony, in which he testified that he was Ms. Mason's on-site supervisor. (Pl. Tr. II, p. 46).

10.    In his affidavit at paragraph 29, Plaintiff states that he and Mr. Reis "had ongoing disagreements about admitting patients who posed a danger to others . . . .  I constantly told him that he was endangering the elderly patients but he overrode my objections and order us to take anyone who could fill the beds.  This was a constant source of disagreement between Reis and myself.

**Kindred's Response**: This statement is inconsistent with Plaintiff's deposition in which he does not identify any ongoing disagreements with Mr. Reis over this issue, despite testifying extensively about numerous other disputes and disagreements he had with Mr. Reis. More specifically, when Plaintiff was examined about the basis for his belief that he was terminated because he objected to unsafe or dangerous patient care practices, he did not identify his alleged disagreement with Mr. Reis over the admission of dangerous patients as playing any role whatsoever in his termination from employment (Pl. Tr. II, pp. 184-186, 201-02).

## ARGUMENT

It is well settled that a party opposing summary judgment cannot create a genuine issue of material fact by relying upon his own inconsistent or contradictory statements. See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F. 3d 1, 5 (1st Cir. 1994) (where "an interested witness has given clear answers to unambiguous [deposition] questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not

5

give an explanation of why the testimony is changed"); <u>Williams v. Raytheon Co.</u>, 220 F. 3d 16, 20-21 (1st Cir. 2000) (accord); <u>Lowery v. Airco, Inc.</u>, 725 F. Supp. 82, 85-86 (D. Mass. 1989) ("When a party has given clear answers to unambiguous deposition questions, he or she cannot raise an issue of fact by submitting a subsequent affidavit that merely contradicts the deposition testimony); <u>see</u> <u>also</u> <u>O'Brien v. Analog Devices, Inc.</u>, 34 Mass. App. Ct. 905, 906 (1993) (a "party cannot create a disputed issue of fact by the expedient of contradicting by affidavit, statements previously made under oath at a deposition").

Based upon the foregoing case law, it is clear that Plaintiff's extensive pattern of contradicting and embellishing his prior deposition testimony should not be countenanced by this Court. Indeed, Plaintiff's recently contrived Affidavit reflects a flagrant disregard for his sworn deposition testimony.[3] Accordingly, the above cited statements in Plaintiff's affidavit should be stricken and "disregarded in considering the propriety of summary judgment." <u>Colantuoni</u>, 44 F. 3d at 5.

## CONCLUSION

For the foregoing reasons, Defendant's motion to strike portions of Plaintiff's Affidavit should be allowed.

---

[3] Plaintiff's affidavit seeks to alter reality by essentially pretending that his deposition was never taken in this case. In fact, Plaintiff's opposition to summary judgment does not contain a **single** citation to his 400 pages of deposition testimony.

6

## LOCAL RULE 7.1 CERTIFICATION

Defendant certifies that it conferred with Plaintiff to narrow the issues raised by this motion, but no resolution was reached.

Respectfully submitted,

KINDRED NURSING CENTERS EAST, LLC,
d/b/a EMBASSY HOUSE SKILLED NURSING
AND REHABILITATION CENTER
By its attorneys,


/s/Richard W. Paterniti
David J. Kerman, BBO#269370
Richard W. Paterniti, BBO#645170
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
Dated:  January 27, 2005            (617) 367-0025