UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY J. LEBLANC,<br><br>　　　　Plaintiff<br><br>v.<br><br>KINDRED NURSING CENTERS EAST, LLC<br>d/b/a EMBASSY HOUSE,<br><br>　　　　Defendant | Civil Action No. 04-CV-10193 RCL |

### MEMORANDUM OF DEFENDANT IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Kindred Nursing Centers East, LLC ("Kindred" or the "Company") has moved for summary judgment on Plaintiff's one-count complaint, which alleges a violation of G.L. c. 149, §187. Plaintiff has filed an opposition to that motion, in which Plaintiff seeks to manufacture sham issues of fact by submitting an Affidavit that repeatedly and improperly contradicts his sworn deposition testimony. Indeed, Plaintiff's Affidavit and opposition papers completely ignore the fact that Plaintiff provided 400 pages of deposition testimony in this case. In addition, Plaintiff's Memorandum in Opposition to Summary Judgment ("Plaintiff's Memorandum") is in unacceptable form because it is comprised of misleading assertions of fact without any citations to the record evidence, and Plaintiff's Memorandum also fails to cite a single legal authority, in disregard of his obligations under Local Rule 7.1(B)(2). In order to address Plaintiff's problematic tactics, and pursuant to the parties' Joint Statement Pursuant to Local Rule 16.1(D), Kindred submits this memorandum in reply to Plaintiff's Memorandum and Affidavit, and in further support of its own Motion for Summary Judgment.[1]

---

[1] In connection with this reply memorandum, Kindred has filed a Motion to Strike Portions of Plaintiff's Affidavit that improperly contradict or embellish his prior deposition testimony. In

I. **PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION UNDER THE HEALTHCARE WHISTLEBLOWER STATUTE**

Kindred has previously demonstrated that Plaintiff cannot meet the threshold requirement of establishing a prima facie case of retaliation under G.L. c. 149, §187. (See Memorandum of Defendant in Support of its Motion for Summary Judgment ("Kindred's SJ Memorandum") at pp. 6-12). As discussed below, Plaintiff's opposition to summary judgment does not contain any admissible or probative evidence that alters the analysis in Kindred's SJ Memorandum.

First, Plaintiff contends that he engaged in "protected activity" by conducting an investigation and then informing his supervisor (Mr. Reis) that Plaintiff's nursing home had failed to perform CORI criminal background checks for many employees. Plaintiff's disclosure allegedly caused Mr. Reis to get visibly angry with Plaintiff. However, Plaintiff's contentions are based entirely upon his recently contrived affidavit, which directly contradicts his sworn deposition testimony regarding his discussion with Mr. Reis about the CORI issue (See Defendant's Motion to Strike at p. 2; Pl. Tr. I, pp. 86-92). Plaintiff's deposition testimony reveals that it was Mr. Reis who brought the CORI compliance issue to Plaintiff's attention (not vice versa), and that Mr. Reis directed Plaintiff to fix the issue.

Plaintiff's opposition also ignores the additional legal deficiency concerning his attempt to rely upon the CORI issue to establish a prima facie case of retaliation. As Kindred previously established, the CORI issue arose during the first month of Plaintiff's employment, and Plaintiff's termination from employment did not occur until 13 months later. (See Defendant's Statement of Undisputed Material Facts at ¶¶15-17). Such a time lapse between these two events precludes Plaintiff from meeting the causal connection requirement of a prima facie case. (See Kindred's SJ Memorandum at pp. 11-12).

---

addition, Kindred has filed the Declarations of Heidi Mason and Doug Collins to address some of Plaintiff's misleading assertions regarding his job performance.

Second, Plaintiff claims that he also engaged in "protected activity" by objecting to his supervisor's decision to convert an unoccupied room with three beds to rehabilitation space, without first obtaining state approval. Kindred has previously pointed out that Plaintiff's dispute with Mr. Reis on this matter did not constitute protected activity under G.L. c. 149, §187, because it did not meet the statutory requirement of objecting to an activity that "poses a risk to public health."

In his opposition, Plaintiff speculates that "taking beds out of circulation, could impact or jeopardize the health of some elderly or disabled persons, in the event of a shortage of nursing home beds, some needy individual could be deprived of one." (Plaintiff's Memorandum at p. 4). Plaintiff's contention is flawed for several reasons. First Plaintiff's deposition testimony revealed that he did not voice any "public health" objection to the merits of converting the three beds to rehabilitation space; instead he simply disagreed with Mr. Reis about whether prior state approval was necessary (Kindred's SJ memorandum at p. 8; Pl. Tr. I, p. 155). In fact, Plaintiff testified at his deposition that he did not consider the removal of the three beds as adversely impacting patient care, but rather viewed the issue as a licensure requirement (Pl. Tr. II, p. 185). Finally, Plaintiff's contention that his facility's removal of the beds could potentially deprive a "needy individual" of a bed is specious, because the record establishes that (a) the conversion was temporary and the beds could be put back if needed (Reis Dep. at p. 38-41), and (b) the census in Plaintiff's nursing home never approached the level where there was any reasonable anticipation that the beds would be needed for residents.[2]

---

[2] As the Declaration of Heidi Mason reveals, the census in Plaintiff's facility never exceeded 111 residents during his employment with Kindred (Mason Dec. at ¶ 4). While Plaintiff alleges that he once achieved a census of 112 residents (Plaintiff's Aff. ¶4), Plaintiff's contention still confirms that there was no risk to public health by temporarily reducing the number of beds in operation at his facility from 123 to 120. Further, Plaintiff's Affidavit regarding the facility's

3

Third, Plaintiff's opposition argues that Plaintiff raised a "public health" issue under the statute because he had disagreements with Mr. Reis regarding Reis' "insistence that young homeless persons be housed at the nursing home despite Plaintiff's protests that this presented a danger to an elderly and infirm population of residents." (Plaintiff's Memorandum at p. 3). This statement is inconsistent with Plaintiff's prior deposition testimony in which he did **not** identify any ongoing disagreements with Mr. Reis regarding this issue, despite testifying extensively about numerous other disputes he had with Mr. Reis. More specifically, when Plaintiff was examined about the basis for his belief that he was terminated because he objected to unsafe or dangerous patient care practices, he did **not** identify his alleged disagreement with Mr. Reis regarding the admission of "dangerous" patients as playing any role in the termination decision (Pl. Tr. II, pp. 184-186, 201-02).

For the foregoing seasons, Plaintiff is unable to establish a prima facie case of retaliation under G.L. c. 149, §187.

## II. ASSUMING ARGUENDO, THAT PLAINTIFF COULD ESTABLISH A PRIMA FACIE CASE OF RETALIATION, KINDRED IS STILL ENTITLED TO SUMMARY JUDGMENT BECAUSE IT HAS ARTICULATED LEGITIMATE NON-RETALIATORY REASONS FOR DISCHARGING PLAINTIFF AND THERE IS NO EVIDENCE OF PRETEXT

Kindred has previously demonstrated that, regardless of whether Plaintiff can establish a *prima facie* case, Kindred's articulation of non-retaliatory reasons for Plaintiff's discharge constitutes an independent grounds for granting Defendant summary judgment, where, as here, Plaintiff has not raised an issue of pretext (Kindred's SJ Memorandum at pp. 12-17). Plaintiff's Memorandum does not contain **any** legal discussion regarding the standards for establishing an issue of pretext. Rather, Plaintiff seeks to obfuscate the issue before the court by (a) raising a

---

census, as well as Ms. Mason's Declaration, refutes Plaintiff's statement at ¶18 of his affidavit that the three removed beds were used from time to time.

number of irrelevant and/or misleading assertions, and (b) continuing his improper tactic of contradicting his sworn deposition testimony.

Plaintiff has raised several inapposite contentions in a disingenuous attempt to raise an issue of pretext. For instance, Plaintiff asserts that he received a "performance bonus in March 2003" because his nursing home was in line with projections (Plaintiff's Affidavit at ¶4; Memorandum at p. 2). However, as demonstrated by the enclosed Declaration of Doug Collins, the bonus referenced by Plaintiff was for calendar year 2002, and even for that year, Plaintiff received only 50% of the bonus for which he was eligible.[3] Further, while Plaintiff contends that he had increased the nursing home's census by April 2003 (Plaintiff's Aff. ¶4), he conveniently ignores the problematic drop in census that occurred during the last four months of his employment. Specifically, the facts disclose that while Plaintiff's facility had a census of 111 for April 2003, the average census during the next four months (May - August 2003) was only 99 residents, a substantial decline (Mason Dec. at ¶ 6). Therefore, the facility's occupancy rate during the latter portion of Plaintiff's employment was decreasing significantly and averaged only 80.49% (Id.). Thus, Kindred's decision to initiate disciplinary actions against Plaintiff during the months of June, July and August 2003 was entirely consistent with the facility's problematic decline in census during this period.

Plaintiff also seeks to undermine Kindred's concerns about his excessive expenditures for contract labor by asserting "Expenditures for contract labor did not increase during my tenure, but were at a high level before I became administrator" "(Plaintiff's Aff. at ¶8). Plaintiff's conclusory assertion cannot withstand scrutiny. As established by the facility's financial records,

---

[3] Thus, Plaintiff received only a $6,000 bonus, despite the fact that he was eligible to receive up to a $12,000 bonus. (Collins Dec. at ¶ 4). Specifically, Plaintiff's 2002 bonus was reduced because his facility did not meet the facility's 2002 performance targets in the following areas: financial earnings, daily census and survey results. (Collins Dec. at ¶ 5).

5

the expenditures Plaintiff incurred for outside contract labor at his facility during his first full month of employment (July 2002) were **$11,876.15** (Mason Dec. ¶ 8). During March 2003, the outside contract labor expenses Plaintiff incurred at his facility were **$21,086**, more than $9,000 higher than when he commenced employment. (Id.) Moreover, after March 2003, Plaintiff's expenditures for outside contract labor increased substantially, and he incurred the following expenses during the last five months of his employment: April 2003 -- **$30,323.05**; May 2003 -- **$31,831.35**; June 2003 -- **$35,310.30**; July 2003 -- **$46,798.10** and August 2003 -- **$45,980.10**. (Id.) Accordingly, Kindred's management clearly had legitimate cause to be concerned about Plaintiff's expenditures on contract labor.[4]

Plaintiff contends that Kindred's criticism of him for failing to comply with management's directive to conduct a wage survey in the summer of 2003 is somehow unwarranted, because Plaintiff now asserts that he had performed several wage surveys, including a survey done in April 2003 (Plaintiff's Aff. ¶¶8-9). Once again, Plaintiff has improperly contradicted his deposition testimony, in which he acknowledged that the last wage survey he performed had taken place in November or December 2002 (Pl. Tr. II, pp. 124-25, 156).

In a further attempt to improperly cloud the issues, Plaintiff asserts that he did not refuse to follow management's directive to make arrangements for an MMQ nurse from another facility to come to Plaintiff's nursing home. While Plaintiff now contends that he "called the other facility and the MMQ nurse was not immediately available" (Plaintiff's Aff. ¶10), this assertion is flatly contradicted by Plaintiff's deposition testimony:

---

[4] While Plaintiff asserts in paragraph 11 of his Affidavit that when Mr. Govoni issued Plaintiff a written warning in July 2003, he (Mr. Govoni) said he was just doing "Reis' dirty work" and that Govoni thought Reis was being "unfair" to Plaintiff, these statements should be stricken because they contradict Plaintiff's deposition testimony regarding the conversation (See Defendant's Motion to Strike at p. 3; Pl. Tr. II, pp. 154-55).

6

**"Q     You never attempted to call the person to arrange for this MMQ person to come to the facility?**

**A     That's correct."**  (Pl. Tr. II, p. 147)

It is well settled that Plaintiff cannot create genuine issues of fact with regard to establishing a prima facie case and/or demonstrating pretext, by submitting an affidavit that continually contradicts his prior deposition testimony.  See Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F. 3d 1, 5 (1st Cir. 1994) (where "an interested witness has given clear answers to unambiguous [deposition] questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give an explanation of why the testimony is changed"); Williams v. Raytheon Co., 220 F. 3d 16, 20-21 (1st Cir. 2000) (accord).

### III.     PLAINTIFF CANNOT OVERCOME THE LEGAL DEFICIENCIES IN HIS STATUTORY WHISTLEBLOWER CLAIM BY ASSERTING A COMMON LAW CLAIM FOR VIOLATION OF PUBLIC POLICY

In a conclusory one sentence footnote, Plaintiff maintains that "even if the court rules that G.L. c. 149, §187 does not apply to plaintiff, plaintiff may pursue (listed in the complaint as an alternate theory of recovery) a discharge in violation of the public policy of the Commonwealth." This contention must be rejected for several reasons.

First, it is well settled that where as here, the legislature has created a detailed statutory remedy to address a particular issue (i. e., healthcare providers who may face retaliation for engaging in certain activities), the courts should not recognize a common law wrongful termination or public policy claim for the same alleged activity.  See Valerio v. Putnam Associates Inc., 173 F.3d 35, 45-46 (1st Cir. 1999) (holding that plaintiff could not assert common law claim for retaliatory discharge because she had federal statutory remedy under the Fair Labor Standards Act: "Massachusetts does not appear to recognize a common law cause of action where the relevant public policy has already been vindicated by a state or federal

7

statute."); Choroszy v. Wentworth Institute of Technology, 915 F. Supp. 446, 451 (D. Mass 1996) (wrongful termination public policy claim preempted by G.L. c.151B); Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 512 (1985), *aff'd*, 397 Mass. 1004 (1986); Frankina v. First Natl. Bank of Boston, 801 F. Supp. 875, 884-885 (D. Mass. 1992), *aff'd without op.*, 991 F.2d 786 (1st Cir. 1993) (holding that employee suing for age discrimination under G.L. c. 151B and ADEA could not maintain common law causes of action for breach of an at-will employment contract and breach of implied covenant good faith and fair dealing); Reidy v. The Travelers Insurance Co., 928 F. Supp. 98, 106 (D. Mass. 1996), *aff'd without op.*, 107 F.3d 1 (1st Cir. 1997), *cert. denied*, 522 U.S. 809 (1997) (summary judgment allowed because Chapter 151B preempted plaintiff's claim for breach of employment contract based upon allegedly discriminatory employment practices.).

Not only is any common law public policy claim barred by Plaintiff's statutory remedy, Massachusetts law does not recognize a public policy cause of action, where as here, an employee alleges that he was discharged because he complained about an employer's noncompliance with a **civil** statute or regulation. See Mistishen v. Falcone Piano Company, Inc., 36 Mass. App. Ct. 243 (1994) (no public policy claim recognized where employee alleged retaliatory discharge for complaining internally that employer's products were poorly made and that sale of such products violated G.L. c. 93A's prohibition on unfair and deceptive trade practices); Compare Shea v. Emmanuel College, 425 Mass. 761 (1997) (holding that employee discharged for internal complaints about **criminal** activity states a public policy claim).

Finally, not only should the Court reject Plaintiff's perfunctory reference to a common law public policy claim for the reasons stated above, any such claim would also be subject to summary judgment because the record evidence demonstrates that Kindred has articulated legitimate non-retaliatory reasons for Plaintiff's discipline and discharge, and Plaintiff has failed

to raise an issue of pretext. See Shea, 425 Mass. at 763-64 (granting summary judgment for defendant and holding that plaintiff's assertion or speculation that the employer discharged her for a retaliatory reason is not sufficient to create a dispute of material fact concerning the reason for her discharge). This constitutes a separate and independent reason for holding that Plaintiff has no viable common law retaliatory discharge claim in this case.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Defendant's November 30, 2004 Memorandum in Support of its Motion for Summary Judgment, Defendant respectfully requests that the Court enter summary judgment in its favor.

                                                Respectfully submitted,

                                                KINDRED NURSING CENTERS EAST, LLC,
                                                d/b/a EMBASSY HOUSE SKILLED NURSING
                                                AND REHABILITATION CENTER
                                                By its attorneys,

                                                /s/Richard W. Paterniti
                                                David J. Kerman, BBO#269370
                                                Richard W. Paterniti, BBO#645170
                                                Jackson Lewis LLP
                                                75 Park Plaza
                                                Boston, MA 02116
Dated: January 27, 2005                      (617) 367-0025